All right. This court is now in session. Please be seated. Will you call the next case, please? 313-0594, Peoples, Inglewood, North Africa, by Justin Nicolosi, v. Tayborn, accounted by Steven Barlow. Mr. Barrow. Good morning, Your Honors. Good morning, Counsel. I am Steve Barrow, Office of the State Appellate Defender, for Defendant Appellant Eugene Tayborn. May I please the Court? In my brief in this case, I raise a single issue, that counsel was ineffective for failing to file a motion to suppress incriminating statements that Mr. Tayborn made to police while submitted a custodial interrogation without the benefit of Miranda warnings. In this case, the State has not contested that there's a reasonable probability of a different result had his statements been suppressed, so I'd like to go ahead and focus on whether counsel's performance was deficient. Specifically, I'd like to focus on whether the record shows that he was in custody at the time that he made the statements. The legal standard for custody is whether a reasonable person in that situation would feel free to terminate the encounter and leave and would feel their freedom of action curtailed to the degree associated with formal arrest. An ordinary traffic stop does not necessarily mean that someone is in custody if they're just detained pursuant to an ordinary traffic stop, where it's expected they'll be briefly questioned, issued a citation, and released. However, a traffic stop may transform into custodial interrogation under certain circumstances, and courts have looked at factors including the number of officers present at the time, whether the occupants of the vehicle were separated from each other and questioned whether apart, in the issue of formal arrest, including handcuffing, whether the contraband was discovered at the time of the questioning, and whether the mood of the questioning changes, whether there's a shift in the mood of the questioning. In this case, Officers Weter and Legner pulled over my client, Mr. Taborn, while he was in a car, a passenger car, that was being driven on Interstate 80. After the car was stopped, Officer Weter walked up to the driver's side and talked to the driver, and Officer Legner walked up and talked to Mr. Taborn on the passenger side. After Officer Weter observed the driver making movements towards her first, he felt suspicious, he asked her to get out of the car, and he took her back by the squad car. After questioning her for some period, well, at that time, when Legner was also talking to Taborn, but engaging in small talk, after Weter questioned the driver, Officer Weter arrested the driver, handcuffing her and securing the back of the squad car. At that point, Taborn was ordered to get out of the car and step back towards the area by the squad car, and according to the testimony of Officer Weter and Officer Legner, that's when Mr. Taborn was handcuffed. One officer... Was he under arrest at that point? The officer's testimony was that he was detained, but they said that he was not under formal arrest, was what the officer said. What's your position? Well, our position is that whether he was under arrest is essentially not relevant to the claim whether he's in custody, I guess, for Miranda purposes, because someone can be in custody in a situation where the officers don't consider them formally under arrest. So in a situation, basically, the fact that he's detained... Is he in custody when he's under arrest? If someone is handcuffed and under arrest, then they are in custody, and there is some case law that supports that. So certainly, handcuffed and under formal arrest is custody. So here, we've got a situation where backup officers arrived. It's not exactly clear in the timing of when they arrived, but we do know that there were at least four officers present at the time that Taborn was questioned about drugs found in the car. So there were four or six officers, two or three squad cars. We've got a police-dominated environment in that situation, according to POB Jordan, where there was the same situation, four officers and two squad cars present. Taborn has been isolated from the driver, which was important in Jordan, where the court found that talking to the occupants of the vehicle in isolation means that they don't know what the other person is saying about them, and they're not sure if the other person is making incriminating statements about them. So here, where the driver was being talked to outside of Taborn's presence, he couldn't have known that she was incriminating him, and then after she talked to him, she was arrested. Then he's taken out of the car. Obviously, he's going to notice that she's arrested in the back of the squad car, and then he's handcuffed. At that point, there's not going to be much doubt in any reasonable person's mind that this is an ordinary traffic stop anymore. It's certainly beyond an ordinary traffic stop, and the driver may have said something incriminating to save herself at that point is what an ordinary reasonable person might think. You know, for purposes of this hearing, can we consider the judge's findings with regard to Count 1? Which findings in particular are you referring to? The judge in Count 1, when he acquitted the defendant, indicated that the defendant was under arrest  Yes, I think that's just significant in terms of the judge's reasoning tended to suggest that he was under arrest. So I think it could be considered that the judge thought that he was under formal arrest, and that's also relevant to whether there's a reasonable probability that the motion would have succeeded, I think, because if that's the judge's opinion, then there's certainly a reasonable possibility that the motion would have succeeded. Well, the statement was made after the drugs were on the hood of the car. That's correct, yes. It was after the drugs were on the hood of the car, so Mr. Taborn was aware that drugs were found. So in that situation, other cases like Kervira are an example where they've really highlighted the fact that after the drugs are found, somebody's going to understand this isn't a brief detention, they're not going to be in custody on those charges. So, yes, that's a really important factor. And we've also got a situation where the mood of the questioning has changed here from just engaging in small talk to now, once we've gained discovery, where Officer McKee is asking Mr. Taborn questions about the cocaine. What was the question? Who is this? The testimony that we have is just from the testimony at the jury trial where what the officer said is that they asked him some questions about the cocaine. So we don't know what the specific question was beyond just knowing that he asked him questions about the cocaine. If an officer stops a car, clearly a show of red lights, siren, pulls up, walks up, asks the driver for his driver's license, he's got some documents, and he looks down into the car and he sees some contraband sitting there. And he says, who's is that? Is that a custodial interrogation? Well, there are some differences between the situation you've suggested and the situation here, obviously. The situation here, we've got evidence that he's handcuffed and that he was isolated from the driver and questioned separately. So I think that that situation would be distinguishable. This court wouldn't necessarily need to decide the issue of whether that would be custody. That's kind of a different case, I guess. So in terms of interrogation, the standard is whether the question is reasonably likely to elicit an incriminating response, and questions about contraband have generally been found to be reasonably likely to elicit an incriminating response. So based on that, I would submit that Mr. Taborn was subjected to custodial interrogation in this case, and that this court should find the counsel was ineffective for failing to file a motion to suppress. And I would ask this court to reverse this conviction and remand the case for a new trial, whereas the new counsel may file a motion to suppress. If there are no additional questions. This defendant was released from prison in August of 2013? I don't remember the precise date that he was released, but that sounds about accurate. He had a lot of pre-sensing custody, because he was in custody from February until sensing, which was a year and about 17 months later. And sensing was in July of 2013, so now it's been a couple years since then. So yes, he's been released off of MSR. And would post-conviction relief be available to him? No, post-conviction relief is not available to him. The state has argued that that's the only way that he can pursue relief in this case, but he would not have that option since he's no longer in custody at this point. And again, all the facts have been established. Essentially everything that's needed to show he's in custody, based on the testimony at trial. The only factual disputes are with regards to the time the officers arrived, and however you look at the testimony, we know that there are four officers and two squad cars present, because the officer who asked him questions about the cocaine arrived with a partner after the original two officers. The officer who asked about the cocaine was Officer McKee, and he wasn't there when the other two officers performed the stop. And we know he arrived with a partner, so we know there were four officers and two squad cars at minimum. Possibly another car with two more officers, but we don't know when that occurred. The only other factual issue is that two officers testified that he was handcuffed, and one officer testified that he wasn't. But the two officers who testified that he was handcuffed were Leitner and Weter, Officers Leitner and Weter, who were present at the scene from the beginning. Officer Weter is the only one who filed a report in this case. He was a primary on the case, and Officers Weter and Leitner also took reasons for handcuffing the defendant in this situation. So Officer McKee's testimony, which was given much later, he did not file the report, is not likely to have been credited over the other two officers' testimony in this situation, especially where the judge believed that he was in custody at the time the cocaine was placed on the hood. So there's plenty of evidence to support this, and a post-conviction petition just wouldn't add anything. We've already got the officer's testimony. There's nothing else that it would really do, and it's not possible. So the only way that Mr. Tabor can get relief is if this court remanded the case based on ineffective assistance of counsel, at which time there would be a hearing on the motion to suppress, and the court can make the factual determinations and decide whether the evidence should be suppressed. Well, on an ineffective assistance of counsel claim on a drug appeal, we don't just say, well, go back and give it a whirl and see what happens. You know, somebody raising ineffective assistance has to show that, yeah, a, counsel was deficient for not filing it, and b, problem two is that the defendant was prejudiced because the failure to do that likely changed the result. Sir? Isn't it pretty significant that the cocaine was found in a woman's purse? Yes. I think that's why the state hasn't argued that there would not have been a reasonable probability of success had this evidence gotten suppressed, because the cocaine was found in the female driver's purse, and she was the one who was acting suspiciously by reaching towards the purse, and that's why the officers got her out of the car originally. So there's lots of evidence suggesting that she was aware of the cocaine, but he was just engaging in small talk with the officer after she had been pulled out of the car at that point. There's really nothing to indicate that he knew that cocaine was in her purse at that point. And the state, of course, relied heavily on the statements of Mr. Tabor in this case. The state had two officers testify to his statement, which was that he was taking the cocaine to Iowa to give to someone, was what his statement to police was, that his arguments should be suppressed. Two officers testified in that statement at trial. In closing arguments, the state repeatedly referenced those statements, and the judge, in his determination on the acquittal of count one that Mr. Carter mentioned, Justice Carter mentioned earlier, had also mentioned that the jury must have relied on these statements in proving guilty. So there was certainly a reasonable probability of success on the motion to suppress. Thank you. Thank you. Mr. Nicolosi. Good morning, Your Honor. Please, the court. Counsel. Your Honor, as I stated in my brief, the people still submit that the direct appeal is not the most appropriate form for this particular discussion because we don't have any inclination as to what counsel was thinking when he didn't file this motion to suppress. And, of course, if counsel's decision to file or not to file is afforded great deference, the people would submit that there is a legitimate argument as to why he chose not to file. What would that argument be? Your Honor, it would focus on the interrogation factor of this analysis, as Justice Schmidt mentioned earlier during counsel's argument. The people would submit that there was no custodial interrogation here. That's a different question about what people were thinking. It's true that the judge said the person was under arrest. At a stipulated bench trial, correct. But these factual findings, the factors such as those that this court laid out in Haviland, the things to consider, the circumstances of the interrogation, the location, the time. There was no handcuffing, was there? That's under debate. We don't know. We're all speculating. That's part of the problem. These issues were never flushed out. They were never considered. No, they were in Haviland. Oh, no, not in Haviland. You're correct, Your Honor. Yeah. Yeah, I'm talking about the court. Yeah, but in Haviland also discusses all kinds of other factors. Not just an issue of formal arrest that were considered in that case, weren't considered in this case. This is just a finding. The judge just said, oh, he's under arrest at a stipulated bench trial. But there were no arguments. There were no consideration of all these factors. How does the guy get convicted of count two? It's because of the state, right? Yes, yes. That's the only evidence they really have against the guy. Cannot argue against. I can't argue around that. Absolutely. So the only thing they have is his statement from McGee's question. Yes, but was that custodial interrogation? The people submit that it wasn't. The people submit that trial counsel also knew that it wasn't. That's why he didn't file his motion, because he knew it didn't have a reasonable probability of success, because it was not the product of interrogation. Well, the judge finds on count one that the guy was under arrest before the drugs were placed on the hood of the car. And the statement took place afterwards. Your Honor, it still wasn't the product of custodial interrogation. It was by and large a volunteer statement. Well, if you're under arrest, are you in custody? Yes. But there was no interrogation, Your Honor. It's the same as if I were arrested and I just volunteered something. Do you volunteer something when you say? Well, before the drugs came out, what exactly was he under arrest for? Absolutely nothing. He wasn't even under arrest. I would argue that he absolutely had the right and a reasonable person would have believed he could have terminated and not answered the general question that McGee posed to him. And that's an argument you'd make if the motion was suppressed. Say that again. That would be an argument you'd make if the motion was suppressed. Sure. No. But, Ron, again, I'm pulling this back to whether or not there was a custodial interrogation here. People would submit that there wasn't. So you've got two officers saying the guy was handcuffed. You've got McGee who's asking the question and knows he didn't ask the Miranda question. So McGee doesn't remember him being handcuffed. Or McGee was confident he wasn't handcuffed. He wasn't handcuffed. Of course, McGee didn't say the Miranda stuff, and he's the one who got the admission from the defendant. Well, Your Honor, yes, but you say got the admission. I don't believe he got anything. I don't believe he was prodding for that. Just like in Hamlin, it was just a general question. Whose stuff is this? It wasn't custodial interrogation. The definition of interrogation are words or actions by police they should know are reasonably likely to elicit an incriminating response. I think this is reasonably unlikely to elicit an incriminating response. Are we on the honor system? So you just throw this, whose pills are these, and you just expect somebody to come out with it? Your Honor, I don't believe this is interrogation, and that's why I don't believe counsel is ineffective here, because this did not have the probability of success because it was not the product of interrogation. Custody, arrest, fine. Interrogation, absolutely not. And therefore, the people would submit that they find that the counsel was not ineffective because there was no reasonable probability of success for a motion to suppress. Are there any other questions? Well, the other thing is we talked about the statements, but this guy could have been convicted on constructive possession in the car, but it's on the counsel between the driver. Sure, right between them. I understand it was a woman's purse and the driver was female, but like you said, they both had equal access to it at that point. Absolutely. There's another basis to support counsel's decision not to file. Are there any other questions? I'd be happy to entertain them. Thank you. Mr. Byrd, I'll leave you alone. Let me answer this. Justice Carter asked about the fellow who was dethroned and said he was under arrest. Under arrest for what? Well, at that point, once they had discovered the cocaine in the vehicle, certainly there would be suspicion as to the occupants of that vehicle. But when he first got him out of the car handcuffed, they didn't have any evidence of him committing any crime at that point, right? Well, what the judge's statement was was that after the cocaine was discovered, that's when he was under formal arrest. But he was handcuffed before the cocaine was discovered, correct? Correct, correct. And at that point, they had no evidence that he had committed any crime. That essentially appears to be correct. The record may not. And the police can do that if they're going to search for their safety. In other words, we're going to search this car, and we just want to keep you where we don't have to worry about you while we're bending over to get into this car. That's fine, but that's still under the law. Until there's evidence of a crime, there's no charge to arrest him for. That's correct. Didn't the trial judge find that the person was in constructive possession of the cocaine? I'm talking about when his ruling on count one, he says he believes the officer's testimony, that the defendant was in constructive possession of the cocaine because the judge believed the officer's testimony that the defendant, and this is from the judge's statement, because the defendant had admitted transporting the cocaine and the defendant was aware that cocaine was in the vehicle. That's correct. Okay. Now that's with the trial judge. So the trial judge was talking about possession, not the greater charge. That's correct. And wasn't that the statement of the judge? Yes, that's one of the statements of the judge. And the other statement the judge made at that time, which was he believed that the defendant was under formal arrest at the time the cocaine was placed on the squad car. He made both of those statements. Well, the judge finds he's in constructive possession, but the intent to deliver can clearly be inferred from the amount of cocaine as opposed to the amount for personal use, right? Well, he was acquitted on the intent to deliver. Okay, but it could be. So when he said the lesser charge, the fact that he was in constructive possession and he was under arrest, well, even without his statement, he didn't need his statement to find him in constructive possession of that dope. Well, need is one thing. I mean, we're not arguing that he wasn't proven guilty beyond reasonable doubt at this point. We're just arguing that counsel was ineffective for failing to file a motion to suppress. All we need here is a reasonable probability of success. Then the result would have been different. The result would have been different. Reasonable probability. In other words, not convicted. Yeah, reasonable probability, right. A reasonable probability that he would not have been convicted. But as I said, this is something that was heavily emphasized by the state. It was their only theory. And we're talking about constructive possession. You need to prove that the person knew that the cocaine was there. So that's something, an element that has to be proven. And these statements were just extremely powerful. Courts have talked about how confessions are the most powerful kind of evidence and their effect is incalculable. There certainly could be a reasonable probability, which could even be 50%, less than 50%. It's not like a reasonable doubt argument where you're going to take all the facts and let the state and only reverse where the evidence is clearly insufficient. This is a situation where all you need is a reasonable probability of success. And I believe there was a reasonable probability of success. In terms of the state's points about the handcuffing, that's a situation where counsel needs to advocate for the client when there's conflicting evidence. In this case, there was conflicting evidence that very strongly suggested he was handcuffed and it appeared the judge believed that. But in any case, that's a situation where if you have these facts, an attorney's got to advocate for their client and file a motion to suppress. Well, it appears the trial judge accepted that he was handcuffed, right? Yes. It appears the trial judge accepted he was handcuffed. But also in Rivera, there was a case where the guy was a driver. It was a driver in a vehicle and there was squad cars pulled in front of and behind it. They were blocking him in so he couldn't drive away. Then they asked him if they could search a car. He consented to the search. They searched the car and found cocaine. This court held that when the cocaine was discovered, he was in custody, even though he wasn't handcuffed. And basically, there was a police-dominant environment and they found the cocaine. So it's not necessarily crucial that there was handcuffing, but it appears the judge believed that. The judge also could have believed that when they found the cocaine, that was enough to mean that he was in custody. Well, the fact that he is – I mean, clearly, I think we can agree that this fellow was not free to leave. Yes. Okay, so he was seized, he was in that sense. But that's still – the question – the thing we still have to decide is whatever questions this officer asked him were amounted to a custodial interrogation, right? Yes, and interrogation – The question is amounted to custodial interrogation. Yes, and about the cocaine, and questions about contraband. Do you know what the questions were to be asked about the cocaine? In other words, hey, whose is this? Is that a custodial interrogation? There have been cases where that has been the question that officers asked. There's one case, actually, that this court decided, actually, where they saw some marijuana on the ground and asked some question about it that wasn't exactly, you know, is this yours? Where did that come from? I guess it was a question. Where did that come from was found to be interrogation. Questions about who possessed contraband certainly would be interrogation. Really, any questions that are about contraband. We're only talking about a reasonable likelihood of eliciting a criminal response. It doesn't even have to be a question to be interrogation. I mean, here we have questions about cocaine. The case law is pretty strong in suggesting that that would be interrogation. And I think the State's point is, with Heavlin, isn't exactly on point, because in Heavlin, this court held the defendant wasn't in custody. So if the defendant's in custody, it's not general on-scene investigation anymore. It's only general on-scene investigation when the person is not in custody. So here, if he's in custody and he's being asked these questions, I would submit that that would be constitutional interrogation. Thank you, Mr. Barrow. Thank you, Mr. Nicholosi. The matter will be taken under advisement. A written disposition will be issued. And right now the court will be in recess until 1.15. All rise. This court now stands in recess.